UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| IN RE: | CASE NO. 09-37091-RBR |
|---|---|
| GULFSTREAM CRANE, LLC | CHAPTER 11 |
| Debtor. | |

DEBTOR'S APPLICATION
FOR EMPLOYMENT OF FINANCIAL ADVISORS
NUNC PRO TUNC TO JANUARY 20, 2010

GULFSTREAM CRANE, LLC (the "Debtor"), respectfully requests an order of the Court authorizing the employment of DAN DOOLEY ("Dooley") and the firm of MORRIS ANDERSON & ASSOCIATES, LTD. ("Morris Anderson") as financial advisors to the Debtor in this case (the "Case"), and states as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for relief requested is U.S.C. § 327(a).

**BACKGROUND**

A. **Petition Date**

3. The Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code[1] (the "Bankruptcy Code") on December 8, 2009 (the "Petition Date"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is in possession of its assets and managing its affairs as a debtor-in-possession. As of the date hereof, no trustee or examiner with expanded powers has been appointed in this Case.

---

[1] 11 U.S.C. §§ 101 et seq.

B. **Organizational Background**

4. General Crane (USA), Inc. ("General Crane") is a Florida corporation and operated for thirty (30) years until approximately 2002. In 2002, General Crane sold substantially all of its assets to the Debtor, Gulfstream Crane, LLC, a Florida limited liability corporation. The Debtor is owned by Jim Robertson, a long-time general manager for General Crane, and Jason Retterath, the son of the founder of General Crane. The Debtor operates under the name "General Crane USA."

C. **Business Operations**

5. The Debtor is engaged primarily in the business of supplying and renting crane, hoist and rigging equipment. The Debtor owns in excess of 300 pieces of equipment which are, at any given time, leased primarily to general contractors in connection with construction projects throughout South Florida, Georgia, Texas and Nevada. The equipment includes hoists, tower cranes, crawlers, rigging and trucking.

6. The Debtor operates and maintains the following facilities in Florida, Georgia and Texas:

(a) The Debtor's corporate headquarters are located at 1360 N.W. 33rd Street, Pompano Beach, Florida (the "Headquarters"). The Headquarters comprise 7.8 acres of office, storage, fabrication and maintenance facilities;

(b) The Debtor's Georgia operations are located at 7735 Bishop Road, Fairburn, Georgia (the "Georgia Location"). The Georgia Location consists of 18 acres of office, maintenance and storage facilities and was established in 2007; and

(c) The Debtor's Texas operations are located at 4000 Oates Road, Houston, Texas (the "Texas Location"). The Texas Location consists of 9.1 acres of office, maintenance and storage facilities and was established in early 2008.

7. During the housing and construction boom over the past several years, the Debtor embarked on an expansion plan in an effort to meet demand. This expansion plan included opening and staffing the Georgia Location and Texas Location as well as the acquisition of equipment valued, at the time, at between $75,000,000.00 and $100,000,000.00. The Debtor's employees also increased in number from approximately 145 people in June 2007 to approximately 200 people in July 2008.

8. In 2007, the Debtor realized gross revenues of approximately $28,000,000.00. In 2008, gross revenues increased to over $41,000,000.00.

**D.    Pre-Petition Financing**

9. In order to finance operations and acquisitions, the Debtor borrowed from the following (collectively, the "Lenders"):

| | | |
|---|---|---|
| (a) | Bank Midwest: | $31,091,326 |
| (b) | SL Financial Services: | $30,604,429 |
| (c) | Wells Fargo Equipment Finance: | $13,301,221 |
| (d) | Bank of America Leasing: | $10,983,332 |
| (e) | FCC Equipment Finance: | $6,935,750 |
| (f) | National City: | $2,093,595 |
| (g) | Center Capital Corp: | $2,085,000 |
| (h) | US Bancorp: | $1,862,312 |
| (i) | Harry Fry & Assoc.: | $668,444 |

10. As of the petition date, the Debtor owed approximately $82,000,000.00 to the Lenders.

**E.    Events Precipitating Bankruptcy**

11. The economic downturn in recent years has been unprecedented and widespread. The construction industry has suffered tremendously. As a direct result, the demand for the

18437580v1 906164 72100

Debtor's equipment has decreased and the Debtor's revenues have dropped precipitously. Moreover, the Debtor's collections of accounts receivable have slowed and some account debtors owing the Debtor have sought bankruptcy protection.

12. Consequently, the Debtor defaulted under a number of loans and several of the Lenders commenced litigation in an effort to recover the collateral securing their loans.

13. In order to stay litigation efforts and to avoid the costs associated with litigation, the Debtor elected to seek Chapter 11 relief in to order preserve assets and to develop and implement a comprehensive restructuring plan.

## RELIEF REQUESTED AND BASIS THEREFOR

17. Subject to the approval of this Court, the Debtor desires to employ Dooley and Morris Anderson as financial advisors in this Case.

18. Dooley and Morris Anderson are qualified to advise the Debtor in this Case.

19. Morris Anderson's depth of experience in bankruptcy matters makes Morris Anderson qualified to advise the Debtor effectively with the financial and related matters that may arise in the context of this Case. Therefore, the Debtor believes that Morris Anderson is well qualified to serve as its financial advisors and that retention of Morris Anderson is in the best interests of the estate.

## SERVICES TO BE RENDERED

20. Morris Anderson services are necessary and will enable and assist the Debtor in performing its duties as debtor and debtor-in-possession. In connection with this Case, Morris Anderson will render the following types of services:

    a. To provide an analysis of the Debtor's cost structure, business location/business units, lease obligations, financial projects and cash projections for purposes of assisting the Debtor with its negotiations with other parties in interest;

    b.    To provide recommendations on cost reduction and liquidity improvements;

    c.    To develop strategies to enhance weekly cash flow and monthly full financial projections;

    d.    To advise and assist the Debtor with preparation of financial projections and other analyses relating to monthly reporting requirements pursuit of confirmation of a plan of reorganization.

### DISINTERESTEDNESS OF PROFESSIONALS

21.    To the best of the Debtor's knowledge, neither Dooley nor Morris Anderson has any connection with the creditors or other parties in interest or their respective attorneys, except as disclosed in the Affidavit in support of this Application.

22.    Morris Anderson has agreed to accept the following as compensation for the services to be rendered and expenses to be incurred in connection with representation of the Debtor:

    a.    a refundable retainer in the amount of $30,000.00; and

    b.    such sums as may be allowed by this Court based on the time spent and services rendered, the result achieved, the difficulty and complexity encountered, and other appropriate factors.

Morris Anderson will not be paid any compensation by the Debtor except upon application to and approval by the Court after notice and hearing.

23.    To the best of the Debtor's knowledge and based on the Affidavit of Dooley submitted in connection with this Application, there are no arrangements between Morris Anderson and any other entity to share compensation to be received in connection with this Case, other than as permitted by section 504 of the Bankruptcy Code.

24.    Under applicable provisions of the Bankruptcy Code, and subject to the approval of this Court, the Debtor proposes to pay Morris Anderson its standard hourly rates and reimburse Morris Anderson for expenses according to Morris Anderson customary

reimbursement policies. The hourly rates of Morris Anderson range from $375.00 to $525.00. The hourly rate of Dooley is $525.00.

25. The hourly rates discussed above are Morris Anderson's standard hourly rates charged to all clients. These rates are subject to adjustment, generally on an annual basis to reflect, among other things, seniority.

26. Morris Anderson has been paid a retainer in the amount of $30,000.00 against which Morris Anderson shall apply to awarded fees and costs subject to approval of the Court.

26. Attached to this Motion is the proposed affidavit demonstrating that Dooley and the firm of Morris Anderson are "disinterested" as required by 11 U.S.C. § 327(a) and a verified statement as required under Bankruptcy Rule 2014.

27. Finally, the Debtor seeks to retain Dooley and Morris Anderson *nunc pro tunc* to January 20, 2010. In support of *nunc pro tunc* retention, the Debtor interviewed prospective financial advisors and selected Dooley and Morris Anderson based on their qualifications. The Debtor requested that Dooley and Morris Anderson immediately commence work in light of the status of these proceedings.

28. A proposed form of Order is attached hereto as Exhibit "A".

**WHEREFORE,** the Debtor respectfully requests an order: (i) authorizing the retention of DAN DOOLEY and the firm of MORRIS ANDERSON & ASSOCIATES, LTD., pursuant to 11 U.S.C. §§ 327 and 330, *nunc pro tunc* to January 20, 2010; and (ii) granting such other and further relief as this Court deems proper.

DATED January 21, 2010.

18437580v1 906164 72100

**HINSHAW & CULBERTSON, LLP**
Attorneys for the Debtor
One East Broward Boulevard, Suite 1010
Ft. Lauderdale, Florida 33301
Telephone: (954) 467-7900
Facsimile: (954) 467-1024

By: ___*s/Michael D. Seese*___
      Michael D. Seese, Esq.
      Fla. Bar No. 997323
      mseese@hinshawlaw.com

18437580v1 906164 72100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| IN RE: | CASE NO. 09-37091-RBR |
|---|---|
| GULFSTREAM CRANE, LLC | CHAPTER 11 |
| Debtor. | |

AFFIDAVIT OF PROPOSED
FINANCIAL ADVISOR TO DEBTOR

STATE OF COLORADO  )
                   )ss
COUNTY OF DENVER   )

DAN DOOLEY, being duly sworn, says:

1. I am a principal and chief operating officer in the firm of Morris Anderson & Associates, Ltd., with offices located at 55 West Monroe Street, Suite 2500, Chicago, Illinois, 60603.

2. I submit this Affidavit in support of the *Debtor's Application for Employment of Financial Advisors Nunc Pro Tunc to January 20, 2010*, in which the Debtor requests authorization to employ Morris Anderson as the Debtor's financial advisors (the "Application").

3. The names, addresses and facsimile numbers of Morris Anderson and the advisors that are expected to be primarily responsible for this matter are:

Morris Anderson & Associates, Ltd.
55 West Monroe Street
Suite 2500
Chicago, IL 60603
Telephone: (312) 254-0880
Facsimile: (312) 727-0180
Dan Dooley (ddooley@morrisanderson.com)
Mark Welch (mwelch@morrisanderson.com)

4.  Morris Anderson is well qualified to serve as financial advisor to the Debtor in the manner described in the Application. Morris Anderson provides financial advisory and restructuring services.

5.  Generally, Morris Anderson intends to render the following types of professional services in connection with the Debtor's case:

   (a)  To provide an analysis of the Debtor's cost structure, business location/business units, lease obligations, financial projects and cash projections for purposes of assisting the Debtor with its negotiations with other parties in interest;

   (b)  To provide recommendations on cost reduction and liquidity improvements;

   (c)  To develop strategies to enhance weekly cash flow and monthly full financial projections;

   (d)  To advise and assist the Debtor with preparation of financial projections and other analyses relating to monthly reporting requirements pursuit of confirmation of a plan of reorganization.

   (e)  To advise the Debtor regarding general corporate, real estate, and litigation issues; and

   (f)  To render such other necessary advise and services as the Debtor may require.

6.  There are no arrangements between Morris Anderson and any other entity to share compensation received or to be received in connection with this case, except as permitted under Section 504 of the Bankruptcy Code.

7.  Morris Anderson acknowledges that all amounts paid to Morris Anderson during this case are subject to final allowance by the Court. In the event that the Court disallows any fees or expenses paid to Morris Anderson the fees and expenses (to the extent previously paid) will be disgorged by Morris Anderson and returned to the appropriate party or as otherwise ordered by the Court.

18437613v1 906164 72100

8. Morris Anderson shall categorize its billings by subject matter and in compliance with the applicable guidelines of the United States Trustee's office. Under applicable provisions of the Bankruptcy Code, and subject to the approval of this Court, the Debtor proposes to pay Morris Anderson its standard hourly rates and reimburse Morris Anderson for expenses according to Morris Anderson's customary reimbursement policies. The hourly rates of Morris Anderson's senior managers range from $375.00 to $525.00. My hourly rate is $525.00

9. The hourly rates set forth above are Morris Anderson's standard hourly rates charged to all clients. These rates are set at a level designed to compensate Morris Anderson fairly for the work of its advisors to cover expenses. Morris Anderson rates are subject to adjustment, generally on an annual basis to reflect, among other things, changes in seniority.

10. It is Morris Anderson's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone and telecopier toll and other charges, regular mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime. Morris Anderson will charge the Debtor for these expenses in a manner and rates consistent with charges made generally to Morris Anderson's other clients or as previously fixed by this Court. Morris Anderson believes that it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

11. Morris Anderson's categorizes its billing by subject matter and in compliance with the applicable guidelines of the U.S. Trustee's Office. Morris Anderson acknowledges its compensation in the Debtor's case is subject to approval of the Court in accordance with sections

3

327(a) and 330(a) of the Bankruptcy Code, Bankruptcy Rule 2016, and the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees.

12. Except for the continuing representation of the Debtor, neither I nor the firm has or will represent any other entity in connection with this case and neither I nor the firm will accept any fee from any other party or parties in this case, except as otherwise disclosed by Morris Anderson and approved by the United States Bankruptcy Court.

### Disinterestedness:

13. Morris Anderson has conducted a check for conflicts of interest and other conflicts and connections with respect to the Debtor's bankruptcy case. Morris Anderson maintains a database containing the names of current, former, and potential clients and other principal parties related to such clients.

14. I caused Morris Anderson to review and analyze the conflict database to determine whether Morris Anderson has any connection with the principal parties in interest in this case to the best of our knowledge, using information provided to Morris Anderson by the Debtor on or about January 19, 2010 and information contained in the database. The following is a list of the categories of known entities that Morris Anderson has searched:

    (a) creditors of the Debtor;

    (b) pre-petition lenders of the Debtor; and

    (c) partners of the Debtor.

15. Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither, I, Morris Anderson, nor any partner, counsel or associate thereof, insofar as I have been able to ascertain, has any connection with the above-captioned Debtor, its creditors or any other parties in interest, or their respective attorneys and accountants, and the United

4

18437613v1 906164 72100

States Trustee or any person employed in the office of the United States Trustee, except as follows:

(a) Morris Anderson routinely performs work for lenders and has in the past worked for and/or at the request of the following parties of interest or their affiliated entities on matters totally unrelated to this case including Wells Fargo, Bank of America, National City, US Bank and the Securities and Exchange Commission.

16. Except as otherwise provided herein, to the best of my knowledge, and based upon the foregoing efforts, Morris Anderson and the advisors employed by it are disinterested persons who do not hold or represent an interest adverse to the estate, and except as set forth above, do not have any connection either with the Debtor, its creditors, or any other party in interest in this case or with their respective attorneys our accountants, with the judges of this Court, or with the United States Trustee or any person employed in the Office of the United States Trustee. Therefore, neither I nor the firm represent any interest adverse to the Debtor or the estate, and we are "disinterested" persons as defined in section 101(14) and as required by section 327(a) of the Bankruptcy Code.

17. Morris Anderson makes the following additional disclosures with respect to Morris Anderson disinterestedness. References to Morris Anderson include all members expected to render services in these cases:

(a) Morris Anderson is not and was not a creditor, equity security holder, or insider of the Debtor; and

(b) Morris Anderson is not and was not, within two years before the date of filing of the petition herein, a director, officer or employee of the Debtor; and

18437613v1 906164 72100

(c)  Morris Anderson has no interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor or for any other reason.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Dan Dooley

SWORN TO AND SUBSCRIBED before me this 21st day of January 2010.

_____
NOTARY PUBLIC, State of Colorado at Large
My Commission expires: 1/23/12

BRAD A. SWANSON
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires January 23, 2012

6

18437613v1 906164 72100