

**ORDERED in the Southern District of Florida on December 22, 2010.**

Raymond B. Ray, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

IN RE:

GULFSTREAM CRANE, LLC,

      Debtor.

Case No. 09-37091-BKC-RBR

Chapter 11

_____/

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED PLAN OF LIQUIDATION

**THIS CAUSE** came before the Court on December 17, 2010 upon the scheduled hearing

("Confirmation Hearing")[1] on the hearing to consider confirmation of the Debtor's *First

Amended Plan of Liquidation* [D.E. # 585] (the "Plan"), filed by the Debtor (the "Proponent") on

November 11, 2010, and the Court, (a) having reviewed the file, (b) having taken judicial notice

of the entire docket maintained by the Clerk of the Court in this Chapter 11 case, including,

without limitation, all papers and pleadings filed in the case, all orders entered, all hearing

transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held

before the Court during the pendency of this case, (c) having considered the sworn declarations

and proffered testimony of Mark Welch and Pelham Smith, (d) having considered the

---

[1] Unless otherwise defined herein, defined terms shall have the meanings ascribed to such terms in the Plan.

18485446v1 0906164 72100

confirmation affidavit of Jim Robertson, (e) having considered the *Certificate of Proponent of Plan and Acceptance of Plan, Report on Amount to be Deposited, Certificate of Amount Deposited and Payment of Fees* [D.E. #750] (the "Certificate of Plan Proponent")filed by the Debtor, (f) having considered the presentations of counsel, and (g) based on the entire record of the Confirmation Hearing, the Court does make and issues the following Findings of Fact, Conclusions of Law, and Order (the "Confirmation Order"):

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.      On December 8, 2009 (the "Petition Date"), the Debtor commenced this Chapter 11 Proceeding ("Case") by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code.

2.      The Court has jurisdiction over these Chapter 11 proceedings pursuant to 28 U.S.C. §§ 157(a) and (b), 1334(a) and the United States District Court's General Order of Reference.

3.      Venue of this Chapter 11 proceeding in this District is proper in accordance with 28 U.S.C. §§1408 and 1409.

4.      The Court's consideration of the Plan is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

5.      The Debtor is a Florida limited liability company.  The Debtor properly qualifies and, therefore, is eligible to be a debtor under Chapter 11 consistent with the provisions of 11 U.S.C. § 109(d).

6.      From and after the Petition Date, the Debtor has operated its business and remains in possession of its assets as a debtor-in-possession pursuant to the authority of 11 U.S.C. §§ 1107 and 1108.

7.     The Court takes judicial notice (and deems admitted into evidence for purposes of the Confirmation Hearing) of the entire Docket maintained by the Clerk of the Court in this Case, including, without limitation, all pleadings and papers filed in the Case, all orders issued by the Court, all hearing transcripts, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Case.

8.     On October 12, 2010, the Debtor filed its *First Amended Plan of Liquidation* [D.E. # 497] (the "October Plan of Liquidation").

9.     On October 12, 2010, the Debtor filed its *First Amended Disclosure Statement for Debtor's First Amended Plan of Liquidation* [D.E. # 496] (the "October Disclosure Statement").

10.     On October 20, 2010, the Court issued the *Order (I) Setting Hearing to Consider Approval of Disclosure Statement, (II) Setting Deadline for Filing Objections to Disclosure Statement, and (III) Directing Plan Proponent to Serve Notice* [D.E. # 534] (the "Order Setting Disclosure Hearing").

11.     The *October Plan of Liquidation* [D.E. # 497], the *October Disclosure Statement* [D.E. # 496], and the *Order Setting Disclosure Hearing* [D.E. # 534] were duly served by the Debtor [D.E. # 536 and 537] in accordance with Bankruptcy Rule 3017 and the Order Setting Disclosure Hearing.

12.     On November 8, 2010, the Court conducted a hearing to consider approval of the October Disclosure Statement (the "Disclosure Statement Hearing"). During the Disclosure Statement Hearing, the Debtor's counsel advised of certain modifications necessary to address objections that had been filed and to reflect the abandonment of certain collateral during the Case. At the conclusion of the Disclosure Statement Hearing, the Court approved the Original

3

Disclosure Statement subject, however, to the amendments or modifications alluded to, or placed on the record by, Debtor's counsel during the Disclosure Statement Hearing.

13. On November 11, 2010, the Debtor filed its *First Amended Plan of Liquidation* [D.E. # 585] (the "Plan") and *First Amended Disclosure Statement for Debtor's First Amended Plan of Liquidation* [D.E. # 586] (the "Disclosure Statement"), which amended the October Plan of Liquidation and October Disclosure Statement to (a) reflect the notices of abandonment that had been filed during the Case and, therefore, to revise the treatment afforded to certain class of Secured Claims, (b) incorporate the settlement with one of the Secured Creditors previously approved by the Court, (c) incorporate an agreement reach with a Secured Creditor relating to the sale of Collateral, and (d) incorporate the other amendments noted on the record at the Disclosure Statement Hearing.

14. On November 10, 2010, the Court entered its *Order (I) Approving Debtor's First Amended Disclosure Statement, (II) Setting Hearing on Confirmation Of Debtor's First Amended Plan of Liquidation, (III) Setting Hearing on Fee Applications, (IV) Setting Various Deadlines, and (V) Describing Plan Proponent's Obligations* (the "Disclosure Statement Order") [D.E. # 579].

15. The Plan [D.E. # 585], the Disclosure Statement [D.E. # 586], the Disclosure Statement Order, and Ballots were duly served by the Debtor [D.E. # 582 and 596].

16. Pursuant to the Disclosure Statement Order, the Confirmation Hearing was scheduled for hearing on December 17, 2010.

17. Pursuant to the Disclosure Statement Order, the deadline to file ballots in connection with the Plan was December 3, 2010 (the "Ballot Deadline").

4

18.     The Plan represents a request by the Debtor for authority to sell all of its right, title and interest in and to the Sale Assets to NEWCO or its designee (the "Buyer") free and clear of claims, liens, interests and encumbrances, except as otherwise provided in the Plan, pursuant to sections 363(b), (f) and (m) of the Code (the "Sale").   Service of the Plan and Disclosure Statement represents good and sufficient notice of the Sale pursuant to and in accordance with Rules 2002 and 6004 of the Code and, therefore, no further notice is necessary.

19.     "Allegiance Crane, LLC" ("Allegiance") is the designee of NEWCO designated for purposes of taking all of the Debtor's right, title and interest to the Sale Assets free and clear of claims, liens, interests and encumbrances, and to receive an assignment of  executory contracts and unexpired leases, except as otherwise provided in the Plan, pursuant to sections 363(b), (f), (m) and 365 of the Code.

20.     As evidenced by the certificates of service previously filed with the Court, and based on the representations of counsel for the Debtor, (1) proper, timely, adequate and sufficient notice of the proposed Sale of the Sale Assets to Buyer and the assumption of the executory contracts and leases has been provided in accordance with Bankruptcy Rules 2002(a), 6004(a), 6006(c) and 9019 for the sale of the Sale Assets to Buyer, and the assumption and assignment of the executory contacts and leases provided for under the Plan and approved by the Court (collectively, the "Contracts"); (2) such notice was good and sufficient, and appropriate under the particular circumstances, and reasonably calculated to reach and apprise all holders of interests about the Sale of the Sale Assets, and the other relief granted herein and satisfied all requirements for due process; and (3) no other or further notice of the Sale of the Sale Assets, the assumption and assignment of the Contracts, or any other form of relief granted herein is or shall be required.

18485446v1  0906164  72100

21.     As demonstrated by the testimony and/or other evidence proffered or adduced at the Confirmation Hearing and the representations of counsel made on the record at the Confirmation Hearing, the Sale and APA were negotiated at arms-length and in good faith by the Debtor, Buyer, Bank Midwest, SL Financial and Wells Fargo.

22.     The Debtor (1) has full corporate power and authority to execute the APA and all other documents contemplated thereby, and the Sale of the Sale Assets by the Debtor and the assumption and assignment of the Contracts have been duly and validly authorized by all necessary corporate action of the Debtor; (2) has all of the corporate power and authority necessary to consummate the transactions contemplated by the APA; (3) has taken all corporate action necessary to authorize and approve the APA and the consummation by such Debtor of the transactions contemplated thereby; and (4) no further consents or approvals, other than those expressly provided for in the APA, are required for the Debtor to consummate such transactions.

23.     Approval of the APA and Sale and consummation of the transactions contemplated thereby at this time is in the best interests of the Debtor, its creditors, its estate and other parties in interest and provides the best opportunity under the circumstances to maximize value for all constituencies.

24.     The Debtor has advanced sound and sufficient business reasons, and it is a reasonable exercise of the Debtor's business judgment to assume and assign the Contracts and to sell, assign and transfer all right, title and interest in and to the Sale Assets on the terms set forth in the APA and to consummate the Sale. The Debtor has demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for completing the transactions consistent with *In re Lionel Corp.* 722 F.2d 1063 (2d Cir. 1983) and *In re Justice*

*Oaks II, Ltd., 898 F.2d 1522, 1549 (11th Cir.), cert. denied* 498 U.S. 959 (1990), and other applicable law.

25.     The APA and the Sale were negotiated, proposed and entered into by the Debtor, Buyer, Bank Midwest, SL Financial and Wells Fargo without collusion, in good faith and from arm's-length bargaining positions.  Neither the Debtor, Buyer, Bank Midwest, SL Financial, nor Wells Fargo have engaged in any conduct that would cause or permit the Sale to be avoided under section 363(n) of the Code and, therefore, the APA and the Sale are not avoidable.

26.     Buyer is a good faith purchaser under section 363(m) of the Code and, as such, is entitled to all of the protections afforded thereby.

27.     The consideration provided by Buyer in accordance with the APA: (1) is fair and reasonable under the circumstances of the Debtor; (2) is the highest and best offer for the Sale Assets under the circumstances of the Debtor; and (3) constitutes reasonably equivalent value and fair consideration under the circumstances of the Debtor, under the Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

28.     The Sale of the Sale Assets must be approved and consummated immediately to preserve the value of the Sale Assets and the viability of the underlying business.

29.     The transfer of the Sale Assets to Buyer will be a legal, valid and effective transfer of the Sale Assets and will vest Buyer with all right, title and interest of the Debtor in and to the Sale Assets, free and clear of all claims (including as defined under Section 101(5) of the Code), liens, interests and encumbrances (collectively, the "**Interests**"), including, but not limited to (1) all deeds of trust and security interests in favor of or for the benefit of any third party, including any replacement liens previously granted by any order of this Court, (2) those relating to taxes arising under or out of, in connection with, or in any way relating to the

7

ownership or operation of the Sale Assets prior to the closing; and (3) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including any equitable or statutory liens), judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership and (b) all debts arising in any way in connection with any agreements, acts or failures to act of any of the Debtor's or any of the Debtor's predecessors or affiliates, claims (as that term is defined in section 101(5) of the Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of this bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, claims otherwise arising under doctrines of successor liability to the greatest extent permitted by applicable law except as otherwise provided in the APA.

30.     Except as expressly set forth herein, the Plan or APA, the Buyer shall have no liability for any liability, claim or other obligation of or against the Debtor related to the Sale Assets by reason of the transfer of the Sale Assets to Buyer. Buyer shall not be deemed, as a result of any action taken in connection with the purchase of the Sale Assets, to: (1) be a successor to the Debtor; or (2) have, de facto or otherwise, merged with or into the Debtor. Except as otherwise provided in the Plan, Buyer is not acquiring or assuming any liability, warranty or other obligation of the Debtor.

31.     Except as otherwise provided in the Plan, Buyer would not enter into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the

Debtor, its estate and creditors and other stakeholders, if the sale of the Sale Assets to Buyer was not free and clear of all Interests of any kind or nature whatsoever, or if Buyer would, or in the future could, be liable for any of such Interests including, but not limited to, (1) all deeds of trust and security interests in favor of or for the benefit of any third party, including any replacement liens previously granted by any order of this Court, and any claims of third parties against the Debtor; (2) any claims, whether pursuant to any state or federal laws or otherwise, including, without limitation, asbestos-related claims; (3) environmental claims or liens arising from conditions first existing on or prior to the closing (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §9601, et seq., or similar state statute; (4) any bulk sales or similar law; (5) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (6) any theories of successor liability.

32.     The Debtor may sell the Sale Assets free and clear of all Interests of any kind or nature whatsoever as contemplated by the APA and the Plan because, in each case, one or more of the standards set forth in sections 363(f)(1) through 363(f)(5) of the Code have been satisfied. Those holders of Interests that did not object, or who withdrew their objections to the Sale are deemed to have consented pursuant to section 363(f)(2) of the Code.

33.     The Debtor has articulated good and sound business reasons for waiving the stay otherwise imposed by Bankruptcy Rules 6004(g) and 6006(d).

34.     Pursuant to the Disclosure Statement Order, the deadline to file objections to Confirmation of the Plan was December 3, 2010 (the "Objection Deadline").

9

35.     On or before the Objection Deadline, the following objections to Confirmation were filed (collectively, the "Objections"):

(a)     On December 2, 2010, Enterprise Leasing Company d/b/a Enterprise Fleet Services filed its *Limited Objection to Confirmation* [D.E. # 670];

(b)     On December 3, 2010, Linden-Comansa America LLC filed its *Objection to Confirmation of Debtor's First Amended Plan of Liquidation* [D.E. # 694];

(c)     On December 3, 2010, the United States Trustee filed its *Objections to Confirmation of Debtor's First Amended Plan of Liquidation* [D.E. # 673]; and

(d)     On December 8, 2010, Jason Retterath, Palm Beach Trucking, LLC, Republic Tower & Hoist, LLC, American Crane and Hoist Erectors, LLC and Republic Crane Services, LLC filed their *Limited Objection to Confirmaiton of Debtor's First Amended Plan of Liquidation* [D.E. # 718].

36.     On December 14, 2010, the Debtor filed its *Certificate of Debtor on Acceptance of Plan, Report on Amounts to be Deposited, Certificate of Amount to be Deposited, and Payment of Fees* (the "Certificate of Debtor") [D.E. # 750].

37.     On December 16, 2010, the Debtor filed the *Confirmation Affidavit of Jim Robertson* (the "Confirmation Affidavit") [D.E. # 766].

38.     On December 16, 2010, the Debtor filed the *Sworn Declaration of Mark Welch* (the "Welch Declaration") [D.E. # 767].   On December 16, 2010, the Debtor filed the *Sworn Declaration of Pelham Smith* (the "Smith Declaration") [D.E. # 768] (the Welch Declaration and the Smith Declaration are hereinafter collectively referred to as the "Declarations").

39.     Pursuant to the Certificate of Debtor, a total of thirty-nine (39) ballots were filed on or before the Ballot Deadline.  The Certificate of Debtor was compiled in connection with the

Plan. Counsel for the Debtor advised the Court that (a) Class 1 was Unimpaired under the Plan and, therefore, was not entitled to vote on the Plan; (b) Classes 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 were Impaired under the Plan; (c) Classes 3, 4, 5, 6, 9, 10, 12, 15 and 16 voted to accept  the Plan; (d) there are no known Class 14 Claims; and (e) Class 17 is Impaired under the Plan, will not receive or retain and property under the Plan and, therefore, is deemed to have voted against the Plan.

40.    *During the Confirmation Hearing, the Debtor advised of the following amendments or modifications to the Plan[2] (the "Amendments")*:

A.    The definition of "Liquidating Trust Assets" under Article I of the Plan is amended as follows:

"*Liquidating Trust Assets*" shall mean (i) Net Proceeds of Actions (with the exception of any Actions to collect accounts receivable and any warranty claim with respect to any Asset being acquired under the APA), including, without limitation, the Avoidance Actions, (ii) the Estate's share of the Net Proceeds of any recoveries of any bad-faith claims against any insurance providers on account of the Class 16 Claim of the Rinkus Family,  (iii) any Assets excluded under the APA which do not represet Collateral of a Secured Creditor, and (iv) the Unsecured Creditor Carve Out.  Liquidating Trust Assets shall exclude any Asset being acquired under the APA.

B.    Section 4.11 of the Plan is amended as follows:

### 4.11.    Class 11. Allowed Secured Claim of Mack

(a)    Description.  Class 11 consists of Allowed Secured Claim of Mack.

(b)    Treatment.  On the Effective Date of the Plan, the Debtor shall convey all of its right, title and interest in and to the Collateral securing the Allowed Class 11 Claim to Allegiance free and clear of claims, liens, interests and encumbrances pursuant to 11 U.S.C. § 363(b) and (f).  In consideration of the foregoing, Allegiance shall pay the holder of the Allowed Class 11

---

[2] When used herein, the term "Plan" shall include the Plan as amended or modified by the amendments and modifications set forth herein.

Claim cash in the amount of $75,000.00 on the Effective Date of the Plan, in exchange for which the holder of the Allowed Class 11 Claim shall reduce the Allowed Class 11 Claim by the amount of $75,000.00. Any deficiency Claim to which Mack may be entitled following the sale to Allegiance shall become and treated as an Allowed Class 15 Claim subject, however, to the rights of the Debtor or Liquidating Trustee to object to such Claim.

(c)    Impairment. The Class 11 Claim is Impaired.

C.    Section 4.15 of the Plan is amended as follows:

**4.15.    Class 15. Allowed Unsecured Claims**

(a)    Description. Class 15 consists of Allowed Unsecured Claims excluding, however, any Unsecured Claims of Eric M. Rinkus, Shannon M. Rinkus, and Zane Rinkus (collectively the "Rinkus Family"), including, without limitation, the successors, assigns and representatives of any member of the Rinkus Family.

(b)    Treatment. On the Effective Date of the Plan, or as soon thereafter as is reasonably practicable, each holder of an Allowed Class 15 Claim shall receive such holder's Pro Rata share of Liquidating Trust Units. Thereafter, each holder of Liquidating Trust Units shall be paid its Pro Rata share of (i) the Net Proceeds of Actions, (ii) the Estate's share of the Net Proceeds of any recoveries of any bad-faith claims against any insurance providers on account of the Class 16 Claim of the Rinkus Family; (iii) the Unsecured Creditor Carve Out; *provided, however,* that Bank Midwest, SL Financial and Wells Fargo shall not be entitled to any Distributions from the Unsecured Creditor Carve Out on account of any Allowed Class 15 Claim in favor of Bank Midwest, SL Financial and Wells Fargo; and (iv) any Assets excluded under the APA which do not represent Collateral of a Secured Creditor following payment of fees, costs and other expenses in accordance with the Liquidating Trust Agreement and the Plan.

(c)    Impairment.  The Class 15 Claim is Impaired.

D.    Section 2.03 of the Plan is modified to provide that the Debtor or Liquidating Trustee, as may be the case, shall be obligated to file quarterly Post-Confirmation Operating Reports which shall include, among other things, all payments made under the Plan and payments made in the ordinary course of business, if any, until such time as the Court enters a Final Decree, or order dismissing or converting the Case.

E.    Section 10.01 of the Plan is amended to provide that Kenneth A. Welt has been selected as Liquidating Trustee.

F.    Section 10.02 of the Plan is amended as follows:

**10.02.    Establishment of Liquidating Trust**

Upon the Effective Date of the Plan, the Liquidating Trustee and the Debtor shall enter into the Liquidating Trust Agreement, a signed copy of which shall be filed with the Court no later than 10-days following entry of the Confirmation Order.  The Liquidating Trust shall be a distinct legal entity from the Debtor, and the Debtor shall have no liability whatsoever from any obligations of the Liquidating Trust pursuant to the Plan, the Liquidating Trust Agreement or otherwise, and is intended to qualify as a Qualified Settlement Fund pursuant to Internal Revenue Code section 468B.  By virtue of its execution of the Liquidating Trust Agreement, the Debtor shall transfer, assign, and deliver all of its right, title and interest in and to the Liquidating Trust Assets to the Liquidating Trust. The Debtor shall execute and deliver such other documentation deemed reasonably necessary by the Liquidating Trustee or its counsel  to assure the proper transfer, assignment and delivery of title to the Liquidating Trust Assets to the Liquidating Trust.  Except as otherwise provided in the section 10.02 and 10.08 of the Plan, the Debtor shall not have any obligation to contribute any funds or assets to the Liquidating Trust.

G.    Section 10.08 of the Plan is amended to provide that the Liquidating Trustee shall receive a reserve in the amount of $25,000.00 for the benefit of the Liquidating Trustee and his Professionals.

H.    Sections 10.11 and 11.05 of the Plan are modified to provide that the United States Trustee shall not be responsible for overseeing or selecting the Liquidating Trustee or Plan Administrator, including, without limitation, providing the names of any potential candidates for Liquidating Trustee or Plan Administrator.

18485446v1  0906164  72100

I.     Sections 10.08 and 11.03 of the Plan are modified to provide that the Liquidating Trustee and Plan Administrator shall be subject to the approval of the Court and, therefore, the Liquidating Trustee and Plan Adminstrator shall be obligated to file retention applications with the Court.

J.     Section 12.19 of the Plan is amended to provide that the Plan shall be substantially consummated in accordance with 11 U.S.C. §§ 1101 and 1127(b).

K.     Section 12.21 of the Plan is amended to provide that the Liquidating Trustee shall file a motion with the Court to obtain a Final Decree and order closing the Case after all Assets, including Liquidating Trust Assets, have been liquidated, sold and otherwise administered and all Distributions to holders of Allowed Claims required under the Plan have been made.

41.     The Amendments represent amendments to the Plan consistent with 11 U.S.C. § 1127(a).  The Plan, as amended by the Amendments, meets the requirements of 11 U.S.C. §§ 1122 and 1123.  Accordingly, the Plan does not require additional disclosure under 11 U.S.C. § 1125 or re-solicitation of votes under 11 U.S.C. § 1126.  In accordance with 11 U.S.C. § 1127 and Bankruptcy Rule 3019, all holders of Claims or Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan, as amended by the Amendments.  No holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Amendments, unless otherwise agreed to by the holder of the Claim or Interest and the Proponent.  The Plan, as amended by the Amendments, shall constitute the Plan submitted for confirmation.[3]

42.     Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with 11 U.S.C. §§ 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure

_____

[3] When used hereafter, the term "Plan" shall mean the Plan as amended by the Amendments.

18485446v1  0906164  72100

Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws, and regulations. Specifically, the Disclosure Statement, Plan, Ballots, and Disclosure Statement Order were transmitted to and served on all holders of Claims or Interests in Classes that were entitled to vote to accept or reject the Plan, as well as to other parties in interest in the Case, in compliance with 11 U.S.C. § 1125, the Disclosure Statement Order, and the Bankruptcy Rules. Such transmittal and service were adequate and sufficient, and no further notice is or shall be required.

43.     The Plan is dated and identifies the Proponent, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

44.     The Plan complies with the following provisions of 11 U.S.C. § 1123:

(a)     11 U.S.C. § 1123(a)(1): The Plan (Article III and Article IV) properly designates and classifies Claims and Interests. Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not made for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Interests;

(b)     11 U.S.C. § 1123(a)(2): The Plan (Article III and Article IV) specifies any Claims that are not Impaired;

(c)     11 U.S.C. § 1123(a)(3): The Plan (Article III and Article IV) specifies any Claims that are Impaired;

(d)     11 U.S.C. § 1123(a)(4): The Plan provides for the same treatment for each Claim or Interest in each Class;

(e)    11 U.S.C. § 1123(a)(5):  The Plan (Article VII) provides for adequate means of implementation;

(f)    11 U.S.C. § 1123(a)(6):  The Plan does not provide for the Liquidating Trust to issue non-voting securities.

(g)    11 U.S.C. § 1123(a)(7):  The Plan (Article VII) contains provisions regarding corporate governance consistent with public policy and provides for the appointment of the Liquidating Trustee and Plan Administrator consistent with public policy; and

(h)    11 U.S.C. § 1123(a)(8):  The Debtor is not an individual.

45.    The Plan complies with all applicable provisions of 11 U.S.C. § 1129 as follows:

(a)    11 U.S.C. § 1129(a)(1):  The Plan complies with the applicable provisions of Title 11 of the United States Code;

(b)    11 U.S.C. § 1129(a)(2):  The Proponent of the Plan has complied with the applicable provisions of Title 11 of the United States Code.  The Proponent and each of its members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents, as applicable, have participated have solicited and tabulated votes on the Plan and has participated in the activities described in 11 U.S.C. § 1125 fairly, in good faith within the meaning of 11 U.S.C. § 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by 11 U.S.C. § 1125(e) and the exculpation provisions set forth in Article XII of the Plan.  The Proponent and each of its members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents, as applicable, have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering,

16

issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such Distributions made pursuant to the Plan;

(c)      11 U.S.C. § 1129(a)(3):  The Plan has been proposed in good-faith, appears to have been negotiated at arms'-length among the Debtor, Buyer, the Official Committee of Unsecured Creditors and other parties in interest.  The Proponent has proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Case, the Plan itself, and the process leading to its formulation.  The parties' good faith is evident from the facts and records of the Case, the Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing and other proceedings held in the Case.  The Plan itself, and the process leading to its formulation, provide independent evidence of the parties' good faith, serve the public interest, and assure fair treatment of holders of Claims and Interests.  Consistent with the overriding purpose of chapter 11, the Case was filed, and the Plan was proposed, with the legitimate purpose of satisfy the Debtor's obligations to the fullest extent possible;

(d)      11 U.S.C. § 1129(a)(4):  No securities are being issued under the Plan;

(e)      11 U.S.C. § 1129(a)(5):   The Plan (Articles X and XI) provides for the appointment of a Plan Administrator and Liquidating Trustee, including, without limitation, rights, powers, and compensation of such persons;

(f)      11 U.S.C. § 1129(a)(6):  There are no rates applicable to the Debtor;

(g)      11 U.S.C. § 1129(a)(7):  Each Impaired Class of Claims and Interests has either accepted the Plan or each older of a Claim or Interest in such Class will receive or retain under

17

the Plan property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 on such date and, therefore, the Plan satisfies the "best interests of creditors test" set forth in 11 U.S.C. § 1129(a)(7);

      (h)    11 U.S.C. § 1129(a)(8): Each Class of Claims and Interests has accepted the Plan or is not Impaired. Alternatively, the Plan complies with 11 U.S.C. § 1129(b) with respect to each Impaired Class of Claims or Interests that has not accepted the Plan. The Plan does not discriminate unfairly and is fair and equitable with respect to such Classes. Classes 2, 7, 8, 11, 13, 14 and 17 did not vote on the Plan. The Plan is fair and equitable with respect to each Class of Secured Claims that has not accepted the Plan inasmuch as the holder of such Claim will realize the "indubitable equivalent" under 11 U.S.C. § 1129(b)(2)(A)(iii) through the abandonment of Collateral or the Plan provides for the sale of the Collateral consistent with the provisions of 11 U.S.C. § 1129(b)(2)(A)(ii). More specifically, the Collateral of Classes 2, 8 and 11 will be sold to the Buyer with the consent of the holders of Claims in Classes 2, 8 and 11. Any remaining Collateral shall be abandoned to the holders of such Claims or sold with their consent. The Collateral of Classes 7 and 13 has or will be abandoned to the holders of such Claims. There are no known Class 14 Claims. Holders of Class 17 Claims will not receive or retain any property under the Plan and no holder of any junior Claim or Interest will receive or retain any property under the Plan and, therefore, the Plan complies with the provisions of 11 U.S.C. § 1129(b)(2)(C)(ii).

      (i)    11 U.S.C. § 1129(a)(9): The Plan provides for payment in full in Cash of each Allowed Administrative Claim and further provides for payment in full of any Priority Tax Claim. Alternatively, the Debtor has Cash reserved in an amount equal to any Disputed

Administrative or Priority Claim in the event that such Claim is Allowed;

(j)      11 U.S.C. § 1129(a)(10):  At least one Class of Claims that is Impaired under the Plan has accepted the Plan without including the votes of Insiders.  Classes 3, 4, 5, 6, 9, 10, 12 and 15 are Impaired and have accepted the Plan;

(k)      11 U.S.C. § 1129(a)(11):  The Plan provides for the liquidation of the Debtor. Based on the proffered testimony of Jim Robertson, Mark Welch and Pelham Smith – which was not controverted and, therefore, was received into evidence - the Plan satisfies 11 U.S.C. § 1129(a)(11).  The evidence proffered or adduced at, or prior to, or in the sworn declarations and confirmation affidavit filed in connection with, the Confirmation Hearing: (a) is reasonable, persuasive, and credible; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtor will have sufficient funds available to meet its obligations under the Plan and, therefore, the Proponent has demonstrated a reasonable probability of succes, thus satisfying the requirements of 11 U.S.C. § 1129(a)(11);

(l)      11 U.S.C. § 1129(a)(12):  The Plan provides for payment in full of any fees pursuant to 28 U.S.C. §1930 as of the Effective Date and for payment thereafter pending entry of a final decree and order closing the Case;

(m)      11 U.S.C. § 1129(a)(13):  The Debtor does not provide retiree benefits;

(n)      11 U.S.C. § 1129(a)(14):  The Debtor is not obligated on any domestic support obligation;

(o)      11 U.S.C. § 1129(a)(15):  The Debtor is not an individual;

(p)      11 U.S.C. § 1129(a)(16):  This provision is not applicable to the Debtor;

(q)      11 U.S.C. § 1129(c)  The Plan is the only plan considered and confirmed by the Court; and

(r)      11 U.S.C. § 1129(d):  The Plan is not intended for the avoidance of taxes or the application of section 5 of the Securities Act of 1933.

46.      Each of the discharge, release, injunction, and exculpation provisions set forth in the Plan and this Confirmation Order: (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to 11 U.S.C. §1123(a)(6); (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtor, the Estate, and creditors; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Case with respect to the Debtor; and (f) is consistent with 11 U.S.C. §§105, 1123, 1129, and other applicable provisions of the Bankruptcy Code.  The record of the Confirmation Hearing and the Case is sufficient to support the discharge, release, exculpation, and injunction provisions contained in the Plan.

47.      Section 7.11 of the Plan appropriately provides for the preservation by the Debtor and Estate of Actions in accordance with 11 U.S.C. § 1123(b)(3)(B).  The provisions regarding Actions in the Plan are appropriate and in the best interests of the Debtor, the Estate, and Holders of Claims and Interests.  The Disclosure Statement and Plan adequately disclosed and preserved the nature of the Actions, including Avoidance Actions.  Following the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Actions, including Avoidance Actions, in accordance with the Liquidating Trust Agreement and the Plan.  The Court retains jurisdiction to hear and determine Actions, including Avoidance Actions.

18485446v1 0906164 72100

48.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in 11 U.S.C. § 1129.

49.    The Proponent and its agents (and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates, and representatives) have acted in good faith throughout the Case.  In addition, they will be deemed to have continued to act in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by the Confirmation Order.

50.    Pursuant to 11 U.S.C. § 363, Bankruptcy Rule 9019, and any applicable laws, and as consideration for the Distributions and other benefits provided under the Plan, all settlements and compromises of Claims and Interests embodied in the Plan constitute good faith compromises and settlements of Claims and Interests, and such compromises and settlements are fair, equitable, reasonable, appropriate in light of the relevant facts and circumstances underlying such compromise and settlement, and are in the best interests of the Debtor, the Debtor's estate, and holders of Claims and Interests.

51.    All transfers of property of the Debtor's estate shall be free and clear of all Liens, charges, Claims, encumbrances, and other Interests, except as expressly provided in or contemplated by the Plan.  Such transfers do not constitute a voidable transfer under the Bankruptcy Code or applicable non-bankruptcy law.

52.    The Debtor has satisfied the provisions of 11 U.S.C. § 365 with respect to the assumption and assignment of the Contracts under the Plan.  The Debtor has exercised reasonable business judgment in determining whether to assume and assign, or reject the Contracts, and the assumption and assignment, or rejection of the Contracts is in the best

Case No.: 09-37091-RBR

interests of the Debtor, the Estate and all parties in interest in this Case. To the extent required, and based on the proffered testimony of Pelham Smith and Jim Robertson, the Buyer has provided adequate assurances of future performance and all amounts necessary to cure any defaults will be paid at Closing or as otherwise agreed to between the Buyer and the non-Debtor party to the Contract.

## ORDER:

**BASED ON THE FOREGOING FINDINGS OF FACT, IT IS ORDERED** as follows:

1.      The Plan is approved and confirmed pursuant to 11 U.S.C. § 1129(a).

2.      To the extent that any objections, including, without limitation, the Objections, reservations of rights, requests, statements, or joinders to Confirmation, including in connection with the designation of votes pursuant to 11 U.S.C. § 1126(e), have not been withdrawn, waived, or settled prior to entry of the Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are overruled on the merits.

3.      The findings of fact and the conclusions of law stated in the Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

4.      This Confirmation Order confirms the Plan and each of the provisions in each and every respect pursuant to 11 U.S.C. § 1129. The Debtor and Buyer are authorized to take any and all actions necessary to implement the Plan. Once finalized and executed, the APA, Bank Midwest New Note, SL Financial New Note, and Wells Fargo New Note (each as defined under

Case No.: 09-37091-RBR

the Amended Plan) and all other documents contemplated by the Plan or APA shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and other security interests purported to be created thereby.

5.      The terms of the Plan and exhibits thereto are incorporated by reference into, and are an integral part of, the Confirmation Order.  The terms of the Plan, all exhibits thereto, and all other relevant and necessary documents, shall be effective and binding as of the Effective Date of the Plan.

6.      The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the Distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the holders of Claims or Interests in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtor except for voting purposes.

7.      The following release, injunction, exculpation, discharge, and related provisions set forth in Article VII and XII of the Plan are approved and authorized in their entirety:

(a)      **7.14    Injunction Against Interference with the Plan**

**Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.**

18485446v1  0906164  72100

Notwithstanding anything herein to the contrary, nothing herein is intended to waive or impair any claims or rights that any Creditor may have against any third party, or any claims or defenses that any third party may hold or possess in response to or against any such claims, on account of, or in connection with, any (a) personal guaranty of any Claim against the Debtor, and (b) any claim against any third party who is a co-debtor on a Claim against the Debtor.  Any and all such claims and defenses are expressly preserved.

(b)      12.04  Exculpation.

Subject to the occurrence of the Effective Date, neither the Debtor, Buyer, the Committee or any of their respective partners, members, officers, directors, agents, financial advisors, attorneys, employees, holders of Equity Interests, partners, affiliates and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Case, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; provided, however, that the foregoing shall not operate as a waiver or release for (i) any express contractual obligation owing by any such Person, (ii) willful misconduct or gross negligence, and (iii) with respect to Professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan; provided further that the foregoing shall not operate as a waiver or release of Claims by governmental entities arising under environmental laws.

Notwithstanding anything herein to the contrary, nothing herein is intended to waive or impair any claims or rights that any Creditor may have against any third party, or any claims or defenses that any third party may hold or possess in response to or against any such claims, on account of, or in connection with, any (a) personal guaranty of any Claim against the Debtor, and (b) any claim against any third party who is a co-debtor on a Claim against the Debtor.  Any and all such claims and defenses are expressly preserved.

(c)      12.05  Injunction Relating to Exculpation

As of the Effective Date, any Creditor is permanently enjoined from commencing or prosecuting against the Debtor, Buyer, Liquidating Trustee, Plan Administrator, and any other Person, whether derivatively or otherwise, of any Action or causes of action exculpated, released or discharged pursuant to this Plan against the Exculpated Parties.

Notwithstanding anything herein to the contrary, nothing herein is intended to waive or impair any claims or rights that any Creditor may have against any third party, or any claims or defenses that any third party may hold or possess in response to or against any such claims, on account of, or in connection with, any (a) personal guaranty of any

18485446v1  0906164 72100

**Claim against the Debtor, and (b) any claim against any third party who is a co-debtor on a Claim against the Debtor. Any and all such claims and defenses are expressly preserved.**

8. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain jurisdiction over all matters arising out of, or related to, the Case and the Plan as set forth in Article IX of the Plan.

9. On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims or Interests shall be cancelled and the obligations of the Debtor thereunder or in any way related thereto shall be discharged to the extent provided for under the Bankruptcy Code; provided, however, that notwithstanding confirmation or the occurrence of the Effective Date, any indenture or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of allowing holders to receive Distributions under the Plan.

10. **Any non-Debtor party to any Contract rejected under the Plan shall have thirty (30) days from the date of the Confirmation Order authorizing such rejection in which to file an unsecured rejection claims for damages, if any.**

11. Pursuant to 11 U.S.C. §1146(a), any transfers of property, or the making or delivery of an instrument, pursuant to the Plan, including, without limitation, the APA and related documents, including, without limitation, the Bank Midwest New Note, SL Financial New Note, Wells Fargo New Note and any mortgage, security or other agreement or lien constituting part of the APA, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation

any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

12.    Subject to Article VIII of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, and any and all non-debtor parties to executory contracts and unexpired leases with the Debtor as set forth herein.  Notwithstanding anything to the contrary in the Plan, the the Debtor shall be authorized to consummate and implement the Sale immediately upon entry of the Confirmation Order.

13.    The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Person.

14.    The failure specifically to include or to refer to any particular article, section, or provision of the Plan or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan, it being the intent of the Court that the Plan and any related documents be confirmed in their entirety.

18485446v1 0906164 72100

15.     Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in the APA or any document entered pursuant to the APA).

16.     Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to the Confirmation Order, without further application to, or order of the Court, or further action by the respective partners or managing agents of the Debtor and with the effect that such actions had been taken by unanimous action of such partners or managing agents.

17.     Pursuant to 11 U.S.C. § 1142(b) and any comparable provision of the business laws of any other state, the Debtor, by and through Jim Robertson, is authorized and empowered to take such actions and to perform such acts as may be necessary, desirable or appropriate to comply with or implement the Plan and any other documents as contemplated in the Plan, and all documents, instruments, and agreements related thereto and all annexes, exhibits, and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any further membership approval.  Further, the Debtor, by and through Jim Robertson, is authorized and empowered to take such actions, to perform all acts, to make, execute, and deliver all instruments and documents, and to pay all fees and expenses as set forth in the documents relating to the Plan that may be required or necessary for its performance thereunder without the need for any further membership approval.

18.     On the Effective Date, the Debtor, by and through Jim Robertson, is authorized and empowered to issue, execute, and deliver the agreements, documents, and instruments contemplated by the Plan, and any document related thereto, in the name of and on behalf of the Debtor.  Subject to the terms of this Confirmation Order, the Debtor, by and through Jim Robertson, is authorized to take any such actions without further action or action of the managing agents or members of the Debtor.

19.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to: (a) the implementation or Consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto and (b) any other acts and transactions referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

20.     Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127 and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Proponent expressly reserves its rights to revoke or withdraw, alter, amend, or modify the Plan, one or more times, after confirmation of the Plan, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such amendment, modification, or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XII of the Plan.  Entry of the Confirmation Order means that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to 11 U.S.C. § 1127(a) and do not require additional disclosure or resolicitation under

Bankruptcy Rule 3019.

21.      The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), through Confirmation on the Effective date. The Liquidating Trustee or the Plan Administrator, as the case may be, shall file with the Court post-confirmation Quarterly Reports and pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon the total of all post-confirmation disbursements made by both the Plan Administrator and the Liquidating Trustee in the ordinary course or payments made under the Plan, until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon the entry of an order by the Court dismissing this Case or converting this Case to another chapter under the United States Bankruptcy Code.

22.      The Amendments are consistent with 11 U.S.C. § 1127(a). The Plan, as amended by the Amendments, meets the requirements of 11 U.S.C. §§ 1122 and 1123. The Plan does not require additional disclosure under 11 U.S.C. § 1125 or resolicition of votes under 11 U.S.C. § 1126. The Amendments are approved in their entirety and incorporated herein by reference.

23.      The Sale and the terms and conditions of the APA are approved in their entirety (including, without limitation, all exhibits and schedules thereto and all of the terms and conditions thereof) and in all respects.

24.      Pursuant to sections 105(a), 363(b) and 365 of the Code, the Debtor is authorized to perform its obligations under and comply with the terms of the Sale and APA, and consummate the transactions, pursuant to and in accordance with the terms and conditions of the APA.

25.      The Debtor, by and through Jim Robertson, its duly acting and authorized

managing member, is authorized and directed to execute and deliver, and empowered to perform under, consummate and implement the APA and the Sale, together with all additional instruments and documents that the Debtor, Buyer, Bank Midwest, SL Financial or Wells Fargo deem reasonably necessary or appropriate to implement the APA and effectuate the Sale, and to take all other and further actions as may be reasonably requested by the Debtor, Buyer, Bank Midwest, SL Financial or Wells Fargo for the purpose of assigning, transferring, granting, conveying and conferring to Buyer or reducing to possession the Sale Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA and Plan.

26.    This Order and the APA: (a) shall be binding in all respects upon all creditors of and holders of equity interests in the Debtor (whether known or unknown), any holders of Interests, all non-Debtor parties to any and all Contracts, all successors and assigns of Buyer, the Debtor and its affiliates and subsidiaries, and any subsequent trustees appointed in the Debtor's Chapter 11 case or upon a conversion to Chapter 7 under the Code of the Debtor's case; and (b) shall not be subject to rejection.

27.    Pursuant to 11 U.S.C. §§ 105(a), 363(f) and 365, the Sale Assets shall be transferred to Buyer in accordance with the APA, and upon the Closing shall be, free and clear of all Interests of any kind or nature whatsoever, except as otherwise provided in the Plan.

28.    Although technically not necessary (as the sale is to be made free and clear of Interests), any party asserting an Interest shall nonetheless execute and deliver a recordable release of its mortgage to Buyer if requested within twenty (20) days of the closing of the Sale.

29.    Except as expressly permitted or otherwise specifically provided by this Confirmation Order or the Plan, all persons and entities, including, but not limited to, all debt

security holders; equity security holders; governmental, tax and regulatory authorities; lenders; trade creditors; and other creditors holding Interests of any kind or nature whatsoever against or in the Debtor or the Sale Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with or in any way relating to the Debtor, the Sale Assets, the operation of the Sale Assets prior to the Closing or the sale are forever barred, estopped and permanently enjoined from asserting against Buyer, its successors or assigns, its property or the Sale Assets such persons' or entities' Interests.

30.     Nothing in this order or the APA shall be construed to limit or extinguish liability of the Debtor to any federal, state or local government agency or department as the former owner or former operator of the Sale Assets under applicable federal, state or local environmental law; provided, however, that Debtor retains its rights to object to any claim asserted by any such governmental agency or department, including the amount and priority of any such claim.

31.     The transfer of the Sale Assets to Buyer pursuant to the APA constitutes a legal, valid and effective transfer of the Sale Assets, and shall vest Buyer with all right, title and interest of the Debtor in and to the Sale Assets, free and clear of all Interests of any kind or nature whatsoever.

32.     Upon the Closing of the Sale, each of the Debtor's creditors and any other holder of an Interest, if requested, is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in the Sale Assets, if any, as such Interests may have been recorded or may otherwise exist.

33.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Interests in the Debtor or the

Sale Assets shall not have delivered to the Debtor prior to the Closing, if requested, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Interests that the person or entity has with respect to the Debtor or the Sale Assets or otherwise, then (a) the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Debtor or the Sale Assets, and (b) Buyer is hereby authorized to file, register or otherwise record a certified copy of this order, which shall constitute conclusive evidence of the release of all Interests in the Debtor or the Sale Assets of any kind or nature whatsoever.

34.     Pursuant to 11 U.S.C. § 365, the Debtor is authorized to (a) assume and assign the Contracts to Buyer, and (b) reject any other Contracts.  Except as otherwise provided in the Plan or the APA, Buyer shall have no liability under the Contracts through the date of Closing and the non-Debtor parties to such Contracts shall have no claim against Buyer through Closing.  Buyer shall have no liability under any Contract not assumed and assigned hereunder and the non-Debtor parties to such Contracts shall have no claim against Buyer or the Sale Assets.

35.     Each non-Debtor party to any Contract that is not assumed and assigned hereunder or in accordance with the Plan or APA is forever barred, estopped and permanently enjoined from asserting against Buyer or the Sale Assets, or the property of any of them, any default arising prior to or existing as of the closing or, against the Buyer, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtor.

36.     This Confirmation Order (a) shall be effective as a determination that, at Closing, all Interests of any kind or nature whatsoever existing as to the Sale Assets prior to the Closing have been unconditionally released, discharged and terminated as set forth herein as against the Sale Assets, and that the conveyances described herein have been effected; and (b) shall be

binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Sale Assets.

37.    Each and every federal, state and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Confirmation Order and the APA.

38.    Except as otherwise expressly provided in the Plan or APA, Buyer shall have no obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment with respect to employees or former employees of the Debtor. Except as otherwise expressly provided in the Plan or APA, Buyer shall have no liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention, benefit and/or incentive plan to which the Debtor is a party and relating to the Sale Assets (including, without limitation, arising from or related to the rejection or other termination of any such agreement), and Buyer shall in no way be deemed parties to or assignees of any such agreement, and no employee of Buyer shall be deemed in any way covered by or a party to any such agreement, and all parties to any such agreement are hereby enjoined from asserting against Buyer any and all claims arising from or relating to such agreement. All notices, if any, required to be given to the Debtor's employees pursuant to the Workers Adjustment and Retraining

Notification Act, or any similar federal or state law, shall be the sole responsibility and obligation of the Debtor, and the Buyer shall have no duties, responsibility or liability therefor.

39.     Except as otherwise provided in the APA, Buyer shall not assume or be obligated to pay, perform or otherwise discharge any workers' compensation debts, obligations and liabilities of the Debtor.  This free and clear order with respect to workers' compensation obligations or liabilities is intended to be all inclusive and shall include, but not be limited to, workers' compensation claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination or other incidents, acts or injuries prior to the date of the closing, including, but not limited to, any and all workers' compensation claims filed or to be filed, or re-openings of those claims, by or on behalf of any of the Debtor's current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments or other obligations of any nature whatsoever of the Debtor relating in any way to workers' compensation liability.

40.     In addition, Buyer shall not assume or be obligated to pay, perform or otherwise discharge any debts, obligations and liabilities of the Debtor arising pursuant to the Debtor's ownership or operation of the Sale Assets prior to the date of the Closing relating to actions, claims, suits, torts, liabilities or obligations of the Debtor relating to former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, who have received, who are receiving as of the date of the Closing or who are or could be eligible to receive any short-term or long-term disability benefits, or any other benefits of any kind arising out of or relating in any way to the employment of persons by the Debtor, including but not limited to, benefits or claims under any Florida, Georgia or Texas unemployment compensation

laws or any other similar state laws; Title VII of the Civil Rights Act of 1964, as amended; the Americans with Disabilities Act of 1990; the Age Discrimination in Employment Act, as amended; the Jones Act; or any other state or federal benefits or claims relating to any employment with the Debtors or any predecessors.

41.     All entities that are in possession of some or all of the Sale Assets upon the Closing hereby are directed to surrender possession of the Sale Assets to Buyer at the Closing, to the extent such property has not already been surrendered or turned over to the Debtor prior to Closing.

42.     Except as otherwise provided in the APA and the Plan, Buyer shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Sale Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein, the Plan or in the APA, Buyer shall not be liable for any claims against the Debtor or any of its predecessors or affiliates, and Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor arising prior to the closing, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Sale Assets prior to the Closing.  Buyer has given substantial consideration under the APA and the Plan for the benefit of holders of Interests.  The consideration given by Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of Buyer, which releases shall be deemed to have been given in favor of Buyer

by all holders of Interests against the Debtor or its respective assets.

43.    Except as otherwise provided in the APA and the Plan, the sale, transfer, assignment and delivery of the Sale Assets shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtor. All persons holding Interests against or in the Debtor or the Sale Assets of any kind or nature whatsoever (including, but not limited to, the Debtor and/or its successors, including any trustees thereof, creditors, employees, unions, former employees and shareholders, administrative agencies, governmental units, secretaries of state and federal, state and local officials maintaining any authority relating to any environmental, health and safety laws, and their respective successors or assigns) hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such interests of any kind or nature whatsoever against Buyer, its property or its successors and assigns or the Sale Assets, as an alleged successor or otherwise, with respect to any interest of any kind or nature whatsoever such person or entity had, has or may have against or in the Debtor, the Debtor's estate, their respective officers, directors or shareholders or the Sale Assets.  Following the closing, no holder of an Interest in the Debtor shall interfere with the Buyer's title to or use and enjoyment of the Sale Assets based on or related to such Interest, or any actions that the Debtor may take in this Case.

44.    This Court retains jurisdiction to enforce and implement the terms and provisions of this Confirmation Order, the APA, all amendments thereto, any waivers and consents thereunder, each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Sale Assets to Buyer; (b) compel performance of other obligations owed by or to the Debtor; (c) resolve any disputes arising under or related to the APA, except as otherwise provided therein; (d) interpret,

implement and enforce the provisions of this Confirmation Order, and (f) protect Buyer against (i) any claims existing or which could be asserted against the Debtor, or (ii) the assertion of any Interests against the Sale Assets, of any kind or nature whatsoever.

45.    The transactions contemplated by the APA and the Plan are undertaken by Buyer without collusion and in "good faith," as that term is used in section 363(m) of the Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization is duly stayed pending such appeal.

46.    The terms and provisions of the APA, the Plan and this Confirmation Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, and its creditors, Buyer and their successors and assigns, and any affected third parties, including, but not limited to, all persons asserting an Interest in the Sale Assets, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Code, as to which trustee(s) such terms and provisions likewise shall be binding.  The terms and provisions of the APA and this Confirmation Order relating to the Sale shall survive any dismissal of this Case notwithstanding any provision or contrary interpretation of 11 U.S.C. § 349.

47.    The failure specifically to include any particular provisions of the APA in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

48.    The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

18485446v1  0906164  72100

Case No.: 09-37091-RBR

49.    Notwithstanding anything in this Confirmation Order or the APA to the contrary, Buyer shall be liable for (a) the obligations in the APA, including, without limitation, the Contracts.

50.    The provisions of this Confirmation Order are non-severable and mutually dependent. The stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d) is hereby waived, and this Confirmation Order shall be effective immediately upon entry.

51.    If there is any direct conflict between the terms of the Plan and the Confirmation Order, the terms of the Confirmation Order shall control.

52.    The Proponent is authorized to consummate the Plan at any time after entry of the Confirmation Order subject to satisfaction or waiver of the conditions precedent set forth in Article VIII of the Plan.

53.    This Confirmation Order is a Final Order. For good cause shown, the stay of Confirmation set forth in Bankruptcy Rule 3020(e) is hereby waived.

# # #

Copies furnished to:

Michael D. Seese, Esq.
Hinshaw & Culbertson, LLP
One East Broward Boulevard, 10th Floor
Ft. Lauderdale, Florida 33301

Attorney SEESE is directed to serve conforming copies of this Confirmation Order on all required parties.

18485446v1  0906164  72100